WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Paul Vicente, a married man,<br><br>Plaintiff,<br><br>v.<br><br>City of Prescott, Arizona, et al.,<br><br>Defendants. | No. CV11-8204-PCT-DGC<br><br>**ORDER** |

Defendants have filed a motion to dismiss Plaintiff's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 6. Plaintiff has responded (Doc. 8) and Defendants have replied (Doc. 10). For reasons that follow, the Court will grant the motion in part and deny it in part.[1]

**I.   Background.**

The following facts are assumed true for purposes of this motion. Plaintiff was hired by the Fire Department as a full time firefighter in February 1994. Doc. 1 at 5. Plaintiff was promoted to Captain in January 2001. *Id.* Plaintiff was a member of the United Yavapai Firefighters, Prescott Chapter, International Association of Firefighters Local 3066 ("Union"). In 2001 he became the Chapter Vice President. *Id.*

---

[1] The parties' request for oral argument is denied because the issues are fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

In August 2010, Plaintiff was contacted by a Union member and notified that Defendant Devendorf had made hostile and sexually suggestive statements to two Union members. *Id.* at 6. Plaintiff complained about Devendorf's behavior and Devendorf was disciplined. *Id.* Approximately two weeks later, Plaintiff was contacted by Caron Nyquist, another Union member, and told that she was being harassed by Devendorf. *Id.* Plaintiff assisted Nyquist in filing a formal complaint. *Id.* During the resulting investigation, Plaintiff was asked if the Union was targeting Devendorf. *Id.* Devendorf was exonerated by the investigation. *Id.* Shortly thereafter, Nyquist resigned. *Id.* at 7.

As Vice President of the Union, Plaintiff would often speak about public safety, firefighter safety, potentially illegal conduct, and pay. *Id.* Plaintiff alleges that he was subjected to harassment because of this speech. *Id.* In particular, on December 22, 2010, shortly after Nyquist announced her resignation, Plaintiff was summoned to a meeting with Defendants Jacobsen and Martinez and told that he had engaged in criminal conduct by trading shifts or obtaining substitutes for shifts with other firefighters. *Id.* On December 23, 2010, Plaintiff met with Defendant Norwood and was told that the situation regarding trading shifts was serious, that Defendants Hadley and Martinez were both going after Plaintiff's job, and that because of a previous disciplinary action "they had [Plaintiff] by the balls." *Id.* Norwood also stated that they wanted Plaintiff out and that Norwood could not save Plaintiff's job. *Id.* Norwood said he would try, without any guarantees, to hold them back and negotiate a retirement option if Plaintiff agreed to retire. *Id.* at 8.

On January 3, 2011, Plaintiff was summoned to meet with Defendants Norwood, Martinez, and Jacobson. *Id.* at 8. Plaintiff was presented with an audit that indicated he illegally traded 59 days in a two-year period, with 35 of those days unaccounted for. *Id.* Defendants Norwood, Martinez, and Jacobson told Plaintiff his conduct was unlawful. *Id.* Plaintiff stated that he believed that he was acting legally and in accordance with established practice and city policy. *Id.* Plaintiff asked if all firefighters were being treated the same regarding the shift swapping. *Id.* Norwood, Martinez, and Jacobsen all

responded that they were not concerned with any others and that Plaintiff should consider retiring or face the consequences, including criminal charges. *Id.* Plaintiff stated that the allegations were incorrect and his actions were not criminal. *Id.* Norwood, Martinez, and Jacobsen responded that Plaintiff's only option was to retire. *Id.* After being pressured, Plaintiff agreed to consider the request, but said he would need at least one year. *Id.* Norwood, Martinez, and Jacobsen stated that Plaintiff's had to cease "all union activity . . . as this was the leading cause why there were all [t]here." *Id.* at 9.

On January 14, 2011, Plaintiff was summoned to meet with Defendants Norwood, Martinez, and Laurie Hadley. *Id.* Plaintiff was presented with a disciplinary agreement that included a directive that Plaintiff retire on or before June 30, 2011. *Id.*

On January 20, 2011, Plaintiff was summoned to a private meeting with Defendant Hadley. *Id.* Hadley told Plaintiff that although paying for trading shifts was legal, the City had the right to restrict them and that this issue was not as big as initially thought. *Id.* Hadley then told Plaintiff that the new issue was that Plaintiff disobeyed a direct order by trading shifts. *Id.* Plaintiff disagreed with Hadley and stated that he was only told about trading shifts informally during a labor/management policy discussion years before and that it was not a formal order by a superior. *Id.* Plaintiff asserted that he had done nothing wrong and was simply following past practice. *Id.* at 10. Hadley told Plaintiff to think about his family and that Defendant Martinez wanted Plaintiff out of the fire department. *Id.* Hadley also stated that the City wanted to know when Plaintiff would retire and that the City wanted to change the disciplinary agreement to a separation agreement. *Id.* Hadley told Plaintiff to take a week off to think about what he really wanted, and that Plaintiff should set a date for retirement so he could work things out with Martinez. *Id.*

Plaintiff made repeated requests to have an attorney present during these meetings, but was denied. *Id.* On February 16, 2011, Plaintiff filed an administrative grievance of harassment. *Id.* Plaintiff alleges that the Defendants who investigated his grievance attempted to slander and retaliate against him. *Id.* at 11. Plaintiff alleges that he was

required to obtain approval for outside employment, although other City employees, including management and rank-and-file firefighters, were not held to the same standard. *Id.* Plaintiff alleges that he was pressured, under false pretenses, to retire early by entering into a Deferred Retirement Option Plan ("DROP"). *Id.* The DROP program is a 60-month program, during which there are no employer contributions to the retirement system and no additional years of credited service accrue. *Id.*

## II.     Standard.

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    Analysis.

Plaintiff's complaint alleges eight counts: (I) Free Speech Retaliation; (II) Freedom of Association Retaliation; (III) Violation of 42 U.S.C. § 1983; (IV) Defamation Per Se; (V) Aiding and Abetting; (VI) Civil Conspiracy; (VII) Violation of Arizona's Constitution and A.R.S. § 23-1411; and (VIII) Injurious Falsehood.

Defendants have attached various exhibits to their motion (Doc. 6-1), including an affidavit of Melissa Fousek and several forms that were part of the DROP agreement. In

ruling on a 12(b)(6) motion, a court may consider documents attached to the complaint, documents relied on but not attached to the complaint when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice. *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir.1994), *overruled on other grounds*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Because Plaintiff refers to the DROP agreement as evidence of an adverse employment action, the DROP forms will be considered by the Court. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1199 (9th Cir. 2010) (considering credit card solicitations and Cardholder Agreement). The affidavit of Melissa Fousek is clearly inappropriate for a motion to dismiss and will not be considered. *See Branch*, 14 F.3d at 453-54.

**A.     Claims Against Various Defendants.**

Defendants argue, and Plaintiff concedes, that the City of Prescott Fire Department is a non-jural entity. *See Braillard v. Maricopa County*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010). The Court will dismiss the Fire Department as a Defendant.

Plaintiff names Mayor Kuykendall and Battalion Commander Devendorf as Defendants, but does not plead sufficient facts to support any claim against them. *See Twombly*, 550 U.S. at 570. Plaintiff alleges that Nyquist announced her retirement on the same day that Plaintiff was allegedly confronted about his shift trading, and that Plaintiff has been continually retaliated against since Plaintiff reported the harassment by Devendorf. Even if assumed true, these allegations raise no more than a possibility that Kuykendall and Devendorf acted unlawfully. *Iqbal*, 556 U.S. at 678. The allegation that "other defendants made like defamatory statements" is conclusory and not entitled to a presumption of truth. *Id*. at 680. Plaintiff's claims against Kuykendall and Devendorf will therefore be dismissed.

Defendants argue that all claims against Defendant Hadley should also be dismissed. Plaintiff alleges that Hadley, during the January 20 meeting, threatened Plaintiff by instructing him to do what was best for his family. Doc. 8 at 8. Threats may rise to the level of a constitutional violation if, under the particular circumstances, those

threats would have deterred a reasonable employee from engaging in protected activity. *See D'Andrea v. University of Hawaii*, 686 F. Supp. 2d 1079, 1088 (D. Haw. 2010). The Court concludes that statements suggesting possible ill consequences for one's family could be significantly threatening. Dismissal of Defendant Hadley is therefore inappropriate.

### B. Claims Arising from DROP Enrollment.

Defendants argue that Plaintiff signed a waiver releasing all claims against the City as a part of the DROP enrollment. Plaintiff argues that "due to the numerous and repetitive illegal actions, [Plaintiff] was pressured, under false pretenses, to retire early by entering into the [DROP program]." Doc. 1 ¶ 57. Defendants rely primarily on *Litrell v. City of Kansas City, Mo.*, 459 F.3d 918 (8th Cir. 2006). In *Litrell*, the Eighth Circuit reviewed a trial court's summary judgment ruling and found that the waiver signed by the plaintiff was voluntary because the plaintiff signed it with the assistance of counsel and there were insufficient facts to show duress. *Id.* at 921-22. This motion is not brought at the summary judgment stage after discovery is complete, as was *Litrell*, and Plaintiff specifically alleges that he was not allowed to have counsel present during the meeting that considered the DROP program. Plaintiff also alleges that a series of meetings placed him under pressure to accept early retirement. Assuming these facts to be true, as the Court must at this pleading stage, this case clearly is distinguishable from *Litrell*.

Defendants argue that Plaintiff was not under duress when he enrolled in the DROP program. The Arizona Supreme Court has adopted the definition of duress set forth in the Restatement of Contracts § 429:

> (a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or
>
> (b) any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement. . . .

*In re Estate of Cohen*, 464 P.2d 620, 624 (Ariz. 1970) (quoting *Dunbar v. Dunbar*, 429 P.2d 949, 952 (Ariz. 1967) (quoting Restatement of Contracts § 429 and cmt. a)). A contract induced by duress is unenforceable. *Ingalls v. Niedlinger*, 216 P.2d 387 (Ariz. 1950).

Plaintiff alleges that on several occasions he was threatened with criminal prosecution if he did not retire. Doc. 1 ¶¶ 31-40. Plaintiff alleges that Defendant Norwood told Plaintiff's wife that Plaintiff had engaged in criminal activity. Doc. 1 ¶ 49. Plaintiff alleges that on January 20 Defendant Hadley told him that although Plaintiff's shift trading may have been legal, Plaintiff had still violated a direct order. Doc. 1 ¶¶ 41-44. Plaintiff alleges that Hadley told Plaintiff that he "needed to do what was right for his family," and that Hadley wanted a date for Plaintiff's retirement. Doc. 1 ¶ 46. Viewed in the light most favorable to Plaintiff, these facts sufficiently suggest duress and place the validity of the waiver in question.

**C.     Counts I–III.**

The individual Defendants argue that they are entitled to qualified immunity. A defendant is entitled to qualified immunity from damages for civil liability if his or her conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has mandated a two-step process for evaluating qualified immunity: the "constitutional inquiry" and the "qualified immunity inquiry." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The "constitutional inquiry" asks whether, when taken in the light most favorable to the non-moving party, the alleged facts show that the official's conduct violated a constitutional right. *Id.* If so, the court turns to the "qualified immunity inquiry" and asks if the right was clearly established at the relevant time. *Id.* at 201-02.

Plaintiff alleges that the conduct of Defendants violated his First Amendment rights to free speech and association. Surprisingly, neither party cites a single case on whether the conduct at issue violated Plaintiff's First Amendment rights and whether those rights were clearly established when Defendants acted. Docs. 6, 8, 10. In light of

such poor briefing, the Court is tempted simply to deny the motion. The Court recognizes, however, that qualified immunity is designed to relieve government officials of the burden of litigation, and that Plaintiff bears the burden of overcoming that immunity. *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009); *see also Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (describing the underlying purposes of qualified immunity).

The Court will deny the motion with respect to Count I because it is widely recognized, and has been for years, that government officials cannot retaliate on the basis of speech protected by the First Amendment. *See*, *e.g.*, *Connick v. Myers*, 461 U.S. 138 (1983). Defendants' briefing appears to acknowledge this fact. *See* Doc. 6 at 10. Count II will be dismissed because Plaintiff fails to cite any law supporting his claim that Defendants' conduct violated his associational rights under the First Amendment, or that the law was clearly established at the time of Defendants' actions. Defendant argues that Count III should be dismissed because the First Amendment retaliation claim is duplicative of the § 1983 claim, but Defendant fails to cite any law to support this argument. The Court will not dismiss Count III on this basis.

With regard to Counts I and III against the City of Prescott, Plaintiff has not alleged that the threats of criminal prosecution were in execution of the City's policy or custom. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978) (holding that a local government may not be sued under § 1983 unless the injury was inflicted during the execution of the government's policy or custom). Counts I and III against the City will therefore be dismissed.

In summary, Defendants' motion to dismiss Counts I and III is granted with respect to the City of Prescott and denied with respect to the remaining Defendants (other than the Fire Department, Kuykendall, Devendorf (see § III.A above)). The motion to dismiss Count II is granted.[2]

---

[2] Defendants argue that Counts I-III should be dismissed because Plaintiff did not suffer an adverse employment action. Taken as true, the allegations of Plaintiff's complaint allege such an action – forcing Plaintiff from his job and into early retirement.

- 8 -

### D. Count IV – Defamation Per Se.

Plaintiff alleges that Defendants engaged in a series of false and defamatory communications about Plaintiff. Doc. 1 ¶ 88. To support this claim, Plaintiff alleges that Defendant Norwood told Plaintiff's wife that Plaintiff had engaged in criminal activity. Doc. 1 ¶ 90. To establish a claim for defamation, Plaintiff must establish three elements: (1) Defendant made a false defamatory statement about Plaintiff; (2) Defendant published the statement to a third party; and (3) Defendant knew the statement was false, acted in reckless disregard of whether the statement was true or false, or negligently failed to ascertain the truth or falsity of the statement. *Peagler v. Phoenix Newspapers, Inc.*, 560 P.2d 1216, 1222 (Ariz. 1977). Defendants argue that Plaintiff has failed to identify any individuals, other than Norwood and the City of Prescott, which have published a false statement to a third party. The Court agrees. Count IV is dismissed as against all Defendants other than Norwood and the City of Prescott.

### E. Count V and VI – Aiding and Abetting, Civil Conspiracy.

Plaintiff alleges that Defendants acted jointly in tortious conduct against Plaintiff and provided substantial assistance, false information, and encouragement to promote the conduct. Doc. 1 ¶¶ 98-101, 105-107. Both civil conspiracy and aiding and abetting are derivative torts. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters*, 38 P.3d 12, 23 (Ariz. 2002); *Rowland v. Union Hills Country Club*, 757 P.2d 105, 110 (Ariz. Ct. App. 1988).

Plaintiff's complaint appears to plead aiding and abetting and conspiracy as stand-alone claims (Doc. 1 at 17-18), which they clearly are not under Arizona law. *Id.* In response to the motion, Plaintiff asserts that these counts, by incorporating all that goes before them in the complaint, actually allege aiding and abetting and conspiracy with respect to all other claims in the case. Such an imprecise allegation, however, does not provide notice of, or set forth a plausible basis for, aiding and abetting or co-conspirator liability against any Defendant. Plaintiff has not alleged which Defendants abetted which wrongs or how the aiding and abetting occurred, nor has he alleged which Defendants

conspired with other Defendants to commit the wrongs. The reader is left to guess, something not permitted by Rule 8 or the pleading requirements of *Twombly* and *Iqbal*. Defendant's motion to dismiss Counts V and VI will therefore be granted.

### F. Count VII – Violation of Arizona's Constitution and A.R.S. § 23-1411.

Plaintiff alleges that Defendants' conduct violated Article 2, Section 5 of the Arizona Constitution. Defendants argue that this allegation does not state a claim for relief. Plaintiff does address this argument in his response brief. The Court therefore will grant Defendants' motion to dismiss Count VII with respect to any private cause of action asserted under the Arizona Constitution. *See* L. R. Civ. 7.2(i).

Plaintiff also alleges that the conduct violated A.R.S. § 23-1411. Defendants argue that Plaintiff has not stated a claim under this statute. Plaintiff responds that Defendants discriminated against him for exercising his constitutional rights.

A.R.S. § 23-1411 states:

> A. Public safety employees serving any city, town, county or fire district in this state have the right to join employee associations which comply with the laws of this state and have freedom to present proposals and testimony to the governing body of any city, town, county or fire district and their representatives. A person shall not be discharged, disciplined or discriminated against because of the exercise of these rights.

This statute protects very specific conduct, none of which is alleged to have been the basis for retaliation in this case. Plaintiff does not allege that he suffered adverse employment action because he joined the Union or because he presented proposals or testimony to the governing body of any city, town, county, or fire district. Defendants' motion to dismiss Count VII will be granted.

### G. Count VIII – Injurious Falsehood.

Plaintiff alleges that Defendants knowingly made false and defamatory statements about Plaintiff in an effort to harm Plaintiff's reputation and to dissuade third parties from doing business with him. Doc. 1 ¶ 120. Defendants' motion to dismiss does not address this claim. Defendants' reply brief argues that this claim should be limited to Defendants

Norwood and the City of Prescott. Doc. 10 at 11. Arguments not raised in an opening brief typically are waived. *See, e.g.*, *Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008). Because Plaintiff was not given a chance to respond to this argument, the Court will not entertain it. Count VIII will not be dismissed.

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 6) **is granted in part and denied in part** as set forth above.

Dated this 26th day of April, 2012.

David G. Campbell
United States District Judge