**LAW OFFICES OF:**

# CURRY, PEARSON & WOOTEN, PLC

Attorneys at Law
814 West Roosevelt Street
Phoenix, Arizona 85007
_____
Telephone: (602) 258-1000;
Facsimile: (602) 523-9000

Michael W. Pearson, State Bar No. 016281
Kyle B. Sherman, State Bar No. 027217
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JOHN PAUL VICENTE and SHAWN MARIE VICENTE,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF PRESCOTT, et al.<br><br>    Defendant(s). | No.   3:11-CV-08204-DGC<br><br>**PLAINITTFS'MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FAILURE TO PRESERVE AND PRODUCE ESI** |

Plaintiffs John Vicente and Shawn Marie Vicente ("Vicente"), through counsel, hereby contend that Defendants failed to produce requested documents and failed to preserve electronically stored information ("ESI") relevant to this litigation. Despite multiple requests for production sent in July of 2012, subpoenas in November of 2013 uncovered documents related to the current litigation that had not been previously disclosed. Furthermore, despite Defendants' duty to preserve evidence relevant to this litigation, from the outset of this claim Defendants' retention policy for electronically stored information was inadequate and violated state public records laws and regulations. Therefore, Plaintiffs move for reasonable sanctions for Defendants' failure to disclose and intentional spoliation of potentially relevant email communications. This motion is supported by Plaintiff's Separate

Statement of Facts ("PSOF") and accompanying exhibits, the record before this Court and the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Factual Background

At the outset of this litigation Plaintiff sent both a Preservation Letter and a Freedom of Information Act Request ("FOIA Request") to the City of Prescott asking that any documents, paper or electronic, related to Plaintiff's claims against the City and its employees be preserved. (PSOF 1). Later, Plaintiff sent Requests for Production of Documents and Things ("RFPs") to Steve Norwood, Mary Jacobsen, Bruce Martinez, Laurie Hadley and the City of Prescott asking for, inter alia, personnel files, documents, and communications relevant to Plaintiff's claims against Defendants pursuant to Rule 34 of the Federal Rules of Civil Procedure. (PSOF 13). Despite these requests, Defendants have on numerous occasions failed to produce requested documents. (PSOF 14-25, 28, 30, 31-33). Furthermore, Defendants' pattern and practice regarding ESI coupled with the City of Prescott's data retention policy make it likely that documents relevant to this litigation were destroyed. (PSOF 2, 3) Both of these contentions are discussed in further detail below.

### II. Legal Analysis

#### A. Failure to Produce Evidence

"A party may serve on any other party a request within the scope of Rule 26(b):
(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
(A) any designated documents or electronically stored information . . . – stored in any medium from which information be obtained . . . ."[1]

Rule 26(b) provides, in turn,

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . "

---

[1] FED.R.CIV.P. 34(a).

2

Here, in addition to the non-preservation of potentially relevant documents and communications described below, Defendants willfully concealed evidence to which Plaintiffs were entitled. The discovery abuses of which Plaintiffs are currently aware include:

1. In the Jacobsen RFP, Plaintiffs ask for "Any and all documents in your possession or under your control that pertain either directly or indirectly to any and all claims in the Plaintiff's complaint." (PSOF 13). Ms. Jacobsen has failed to provide her notes from meetings with Mr. Vicente on December 22, 2010, and January 3, 2011, though these notes fall within the scope of request number five and are not protected by any privilege. (PSOF 23). In addition, Mr. Pearson has contacted Mr. Jellison about these documents in particular, yet Defendants still have not provided them. (PSOF 23). These documents are relevant to Plaintiffs' claims that Defendants forced him to retire in retaliation for advocating on behalf of Caron Johnson, and these documents are not privileged.

2. Plaintiffs also requested "Any and all records, . . . or things regarding the planning, organization, or participation of interviews, meetings . . . related to JP Vicente from . . . January 1, 2009, to the present" from Ms. Jacobsen. (PSOF 13). When Ms. Jacobsen finally provided her Microsoft Outlook Calendars for the relevant months, they were inexplicably redacted. (PSOF 24)

3. From Defendant Martinez, Plaintiffs requested "Any and all correspondence . . . between Defendants related to the investigation and any action taken surrounding the events and allegations against Defendant Donald Devendorf as stated in Plaintiff's complaint" and "All documents in [Martinez's] possession or under [Martinez's] control that pertain either directly or indirectly to any and all claims in the Plaintiff's complaint." (PSOF 13). Yet, Mr. Martinez failed to disclose disciplinary orders he sent to Mr. Devendorf modifying Mr. Devendorf's responsibilities as a result of Devendorf's sexual harassment of Caron Johnson. (PSOF 14). Defendants only disclosed

this document after Plaintiffs discovered it pursuant to the Devendorf Subpoena. (PSOF 27). No privilege applies to this communication, and it is relevant to Plaintiffs claim that Defendants unfairly retaliated against him for advocating on behalf of Caron Johnson.

4. Defendant Martinez also failed to disclose an email he sent to Ralph Lucas on December 29, 2008 entitled "RE: Caron Has Been Moved" in which he derides the change in Caron Johnson's work duties due to her pregnancy and makes sexually suggestive jokes concerning Ms. Johnson and Mr. Devendorf. (PSOF 29). No privilege applies to this communication, and it likewise is relevant to Plaintiffs' claims against Defendants.

5. Defendant Martinez failed to disclose another email he sent to Ralph Lucas in which Martinez explains that Mr. Devendorf "has been placed on an improvement program" in light of a claim filed against him. (PSOF 31). Again, no privilege applies to this communication which is pertinent to Plaintiff Vicente's claim that Defendants unfairly retaliated against him.

6. The City of Prescott had a duty to disclose the above mentioned documents in response to Plaintiffs' City of Prescott RFP. The City of Prescott likewise failed to disclose these documents though Plaintiffs requested them. (PSOF 13).

7. Defendant City of Prescott has also failed to produce a complete copy of Mr. Devendorf's personnel file. (PSOF 14). The file produced by Defendants contains evaluations of Mr. Devendorf's performance for the period from March, 2006 through March of 2012, though the file indicates that Mr. Devendorf applied for a job with the PFD in 1982. There is no documentation whatsoever concerning Mr. Devendorf's employment with the PFD from 1982 until 2000, from 2000 until 2004, and from 2004 until 2006. The incomplete file Defendants produced contains no documentation of the investigation and subsequent discipline arising from Mr. Devendorf's sexual harassment of Caron Johnson (nee Nyquist). Jellison has indicated that Plaintiffs' counsel may come

4

to his office to inspect the complete file, but he will not deliver it to Plaintiffs. (PSOF 14). Mr. Devendorf's personnel file is not subject to any privilege and has a direct relationship to the facts and claims alleged by Plaintiffs.

8. The City of Prescott also had a duty to produce an email Ralph Lucas sent to Mr. Devendorf on February 24, 2011 in which Mr. Lucas references Devendorf's "[l]ongstanding relationships/issues" that "need resolution." (PSOF 32). Again, Defendants only disclosed this email after Plaintiffs discovered it independently through the Lucas Subpoena, and not in response to Plaintiffs' valid RFP. (PSOF 32).

9. Defendants produced an automatic out-of-office reply email from Mary Jacobsen to Bruce Martinez sent on February 7, 2011. (PSOF 25). The subject of the email is "Disciplinary Action Against J.P. Vicente," therefore, it is highly probable that the Martinez email to which Ms. Jacobsen's email responds is relevant to this litigation. Defendants have failed to produce this email in response to either the Martinez or COP RFPs, however. (PSOF 25).

10. Plaintiffs requested "The *entire* investigative report prepared by investigator Keith Sobraske regarding Plaintiff JP Vicente's administrative complaint as enumerated in the Plaintiff's complaint." (PSOF 15). Defendant City of Prescott did produce most of the report, however many of the transcripts of interviews conducted in connection with the investigation contain suspicious redactions, which seem to have more to do with Defendants' desire to avoid disclosing evidence harmful to their case than privilege.

    (a)    *Sobraske's interview with former PFD Chief Darrell Willis.*

During his interview with former PFD Chief Darrell Willis, Mr. Sobraske questions Mr. Willis about a legal opinion rendered by former City of Prescott Attorney John Moffitt on the pay for trade issue. Mr. Willis indicated that he had shared this opinion with current PFD Chief Bruce

5

Martinez. In response to Mr. Sobraske's query as to whether Mr. Martinez remembered Mr. Willis telling him of Mr. Moffitt's opinion, Mr. Willis answered:

> "I don't remember [Martinez] maybe even commenting other than the fact that [redacted]. It was like wow, and so at that point I just mentioned, you know, a few years ago I got this deal that said it wasn't illegal, unless the law has changed." (PSOF 16).

One of Sobraske's follow-up questions is also strangely redacted: "Okay. But he came to you, I guess the reason why you brought out this information is that Bruce had come to you and indicated that [redacted]."(PSOF 16).  Mr. Willis' response to Mr. Sobraske's question, "[Martinez] . . . indicated that according to the information you had recieve what J.P. was doing was illegal?" is redacted.[1]

(b) *Sobraske's first interview with city manager Steve Norwood*

Mr. Sobraske interviewed Defendant Norwood on May 6, 2011. During that interview, Mr. Sobraske asked Defendant Norwood who came up with the idea of separating J.P. Vicente from city employment.[2] Mr. Norwood's answer is redacted, as well as Mr. Sobraske's follow up question.[3]

(c) *Sobraske's second interview with Norwood.*

Mr. Sobraske interviewed Defendant Norwood a second time on June 30, 2011. The only redaction in this interview occurs in a question asked by Sobraske: "And, according to Mary, [redacted]."[4]

(d) *Sobraske's interview with Jeff Moffitt.*

Mr. Sobraske interviewed PFD employee Jeff Moffitt on April 25, 2011. Jeff Moffitt's response to the question, "That's what Mary [Jacobsen] told you?" is mostly redacted.[5] The answer to a follow up question about Ms. Jacobsen's statements to Jeff Moffitt concerning the legality of pay for

---

[1] *Id.*
[2] Redacted Transcript of Sobraske Interview with Norwood on May 6, 2011 at 11.
[3] *Id.*
[4] Redacted Transcript of Sobraske Interview with Norwood on June 30, 2011 at 2.
[5] Redacted Transcript of Sobraske Interview with Jeff Moffitt on April 28, 2011 at 14.

6

trade is likewise mostly redacted.[1] An exchange presumably concerning whether or not Chief Martinez thought pay for trade was legal is mostly redacted.[2] Later on in the interview, during an exchange concerning Mr. Vicente sending his wife to pay debts Mr. Vicente owed due to others working his shifts, one of Sobraske's questions and Jeff Moffitt's answer are entirely redacted.[3]

(e) *Sobraske's interview with Chief Martinez*

During his interview by Sobraske, on several occasions Mr. Martinez's recounting of statements made to him by Defendant Jacobsen in connection with Mr. Vicente's pay for trade are redacted.[4]

(f) *Sobraske's interview with Ralph Lucas*

A portion of Sobraske's interview with PFD employee Ralph Lucas is entirely redacted. From the surrounding statements, it is probable that the redacted portion concerns statements Defendant Martinez made to Lucas about Mr. Vicente engaging in illegal conduct.[5]

(g) *Sobraske's interview with Dennis Jeffrey*

One of Sobraske's questions to PFD employee Dennis Jeffrey, presumably concerning the sexual harassment of Caron Johnson is completely redacted.[6] A portion of a statement by Jeffrey concerning false statements made by city employees is redacted.[7]

Plaintiffs' are mindful of the Court ruling that attorney-client communications regarding information obtained in administrative interviews is presumptively privileged. But, in light of the numerous other discovery abuses described in this motion, Plaintiffs request that the Court conduct an

---

[1] *Id.* at 15.
[2] *Id.* at 15.
[3] *Id.* at 16.
[4] Redacted Transcript of Sobraske Interview with Bruce Martinez on April 28, 2011 at 29, 30, 32, 36.
[5] Redacted Transcript of Sobraske Interview with Ralph Lucas on April 25, 2011 at 31.
[6] Redacted Transcript of Sobraske Interview with Dennis Jeffrey on April 25, 2011 at 11.
[7] *Id.* at 29.

in camera inspection of the unredacted versions of the above mentioned interviews in order to determine if any privilege applies.

### B. Failure to Preserve Evidence Relevant to This Litigation

Defendants failed to preserve an unknown number of potentially relevant emails.  Instead, Defendants describe an inconsistent and haphazard record collection approach as well as an improper retention and deletion policies contrary to Arizona public records law.  Destruction of evidence or the failure to preserve property for another's use as evidence in pending litigation constitutes spoliation.[1] Specifically, failure to "preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences."[2]  "A party seeking sanctions for spoliation of evidence must prove the following elements:  (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought to discovery of the spoliated evidence[.]"[3]  Each of these elements is laid out below.

#### 1. Obligation to Preserve

"It is well established that the duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation."[4]  "Stated differently, the duty to preserve is triggered not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation

---

[1] *See United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002).
[2] *Surowiec v. Capital Title Agency, Inc.*, 790 F.Supp.2d 997, 1005 (D. Ariz. 2011) (quoting *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003)); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (noting willful destruction of electronic files constituted spoliation).
[3] *Surowiec*, 790 F.Supp.2d at 1005 (quoting *Goodman v. Praxair Servs., Inc.*, 632 F.Supp.2d 494, 509 (D. Md. 2009))
[4] *Surowiec*, 790 F.Supp.2d at 1005 (internal citation and quotation omitted).

8

[18] At the very least, Defendants had a duty to preserve email communications and information relevant to this litigation at the time Plaintiff's Notice to Preserve Information and Data was sent via certified mail on February 8, 2011. (PSOF 1).

However, Defendants' obligation to preserve email communications arose much earlier. Defendants, as public officials and employees of the state have a duty to "protect and preserve" all email communications created in the course of their public duties.[19] Furthermore, such email communications shall not be destroyed or otherwise disposed of by any agency of the state unless it is first determined by the state library that the record has no further "administrative, *legal*, fiscal, research or historical value."[20] However, until March of 2011 it was customary for public officials of the City of Prescott to make their own determinations as to what constituted retainable public records (PSOF 2) and there was a routine policy of expunging deleted emails after 30 days. (PSOF 3). For example, after receiving Plaintiff's preservation request, Mary Jacobsen had an assistant, more specifically a temp, pull files the assistant believed to be relevant to this present litigation and send them to Linda Ripley, the legal administrator in the City's Legal Department. (PSOF 4). Moreover, Jacobsen mentioned officials get regular reminders to "review [their] emails and clean them up," implying that it is common practice for officials to independently categorize their emails and delete those they believe no longer need to be retained without any input from the state library. (PSOF 5) Bruce Martinez was another official instructed to preserve email communications related to this matter. Similar to Jacobsen, without the aid of an independent IT staff, Martinez searched the C: drive of his work computer and emails in Microsoft Outlook, querying the names mentioned in the preservation request and sending what he found to Ripley. (PSOF 6) However, Martinez admits that searching City's network for relevant emails was beyond his level of knowledge. (PSOF 7). Martinez also admitted to sending work-related documents to a personal desktop at home, owned by

---

[18] *Id.* (internal citations omitted).
[19] A.R.S. § 41-151.15(A).
[20] A.R.S. § 41-151.15(B) (emphasis added).

his wife. (PSOF 8). Nevertheless, Martinez made no indication he searched his home computer for email communication relevant to this case.

There was also some confusion as to what role the City's IT department played in searching, collecting, and preserving requested email communications. Martinez stated he had no independent IT person come and search his computer. (PSOF 9). Jacobsen however, while mirroring Martinez's recollections that no independent IT person came on-site to search her computer, claimed that the IT Department collected the requested email communications remotely from "their area" and sent them to the City's Legal Department. (PSOF 10). However, according to Nate Keegan, director of the City's IT Department, the IT Department never received notification of the preservation request and was never asked to preserve ESI for this matter, whether by searching officials' physical computers or searching over the network. (PSOF 11). Taken together, this conduct falls far short of the Defendants' duty to maintain and produce public records under the applicable state statutes.[21]

### 2. Culpable State of Mind

"Courts have not been uniform in defining the level of culpability—be it negligence, gross negligence, willfulness, or bad faith—that is required before sanctions are appropriate."[22] "Nor is there consensus as to how the level of culpability is to be determined, or what prejudice, if any, may be presumed from culpable conduct."[23] However, it is clear that "[a]n allegedly spoliating party's culpability must be determined case-by-case."[24] In this case, there has been, at the very least, negligence as a result of the ESI retention policies of the City of Prescott and, at worst, use of this policy to willfully destroy email communications relevant to Plaintiff's claim or defense.

---

[21] *See, e.g.*, *Griffis v. Pinal Cnty.*, 215 Ariz. 1, 5, 156 P.3d 418, 422 (Ariz. 2007) (emails generated or retained on a government computer system relating to government business are public records); *Lake v. City of Phoenix*, 222 Ariz. 547, 549-50, 218 P.3d 1004, 1006-07 (Ariz. 2009) (holding that electronic version of the public records includes embedded metadata); *Phoenix Law Enforcement Ass'n v. City of Phoenix*, 1 CA-CV 10-0862, 2012 WL 461812, *3 (Ariz. Ct. App. 2012) (PowerPoint presented to city officials was "public record" because it constituted activity supported by public money that bore "a 'substantial nexus' to government activities."); *Cox Ariz. Pubs., Inc. v. Collins*, 175 Ariz. 11, 14, 852 P.2d 1194, 1198 (Ariz. 1993).
[22] *Surowiec*, 790 F.Supp.2d at 1006 (internal quotation and citation omitted).
[23] *Id.* at 1006-07.
[24] *Id.* at 1007.

As previously mentioned, public officials, and in some cases their assistants, were allowed to determine on their own which emails constituted public records and had no further "administrative, legal, fiscal, research or historical value." However, under state statute this determination is to be made solely by the state library. Coupled with the policy of expunging deleted emails after a 30-day window, the City of Prescott's non-compliance with Arizona state public records laws appears grossly negligent. It is of note that this is not the first time the City of Prescott has been sanctioned for their ESI retention procedures. (PSOF 12). The intentional pattern and practice of failing to abide by their legal duty is willful conduct.

However, there is also evidence that a particular email relevant to this litigation, which was not produced in disclosure but subsequently recovered by subpoena of Ralph Lucas's emails, was intended to be destroyed. (PSOF 13). In this email, sent from Bruce Martinez to Ralph Lucas on December 29, 2008, Martinez derides Caron Johnson's change in work duties due to her pregnancy and makes suggestive jokes at her expense. (PSOF 29). However, at the top of the email are the words "please destroy." (PSOF 29). The fact that the recovered email communications were clearly relevant to the Plaintiff's claims and directly contradicted prior sworn witness testimony during a deposition (PSOF 30), lends support to the contention that there may have been other such emails which were deleted and subsequently lost 30 days later due to the City's illegal data retention policy in place at the time. This December 29, 2008 email, while admittedly sent at a time outside of the time frame set out in the preservation request, provides evidence that the public officials working for the City of Prescott actively deleted evidence relevant to this litigation and may have continued to do so, possibly willfully. For example, Plaintiffs discovered another email sent from Mary Jacobsen to Bruce Martinez on February 7, 2011 with the subject line "Out of Office: Disciplinary Action Against J.P. Vicente. (PSOF 25). However, this email was an automated response, and the initial email that triggered it has never been disclosed. (PSOF 25). It is possible this constitutes another email potentially destroyed by Defendants, this time within the relevant time frame laid out by the preservation request. Thus, there is ample evidence that Defendants possessed a culpable state of mind.

### 3. Relevance to Claims

There is substantial evidence that Defendants may have deleted known email communications between those individuals named in the preservation request. What is very telling is the email relevant to this litigation previously mentioned with the words "please destroy" at the top of the document. Had that document not been uncovered by subpoena, it would likely have been lost. How many other relevant emails like that one that were deleted is unknown. However, that other relevant email communications have been subpoenaed and uncovered years after the initial preservation letter makes it very likely other relevant email communications during that time frame were lost or destroyed.

### C. Appropriate Sanctions

When dealing with spoliation there is a five part test used in the Ninth Circuit to determine what sanction is warranted under the circumstances: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."[25] In this case, the serious sanction of a default judgment is warranted and appropriate here. Had Defendants complied with their discovery and public records obligations, this case could have been brought to trial more expeditiously. There would have been no need for Plaintiff's repeated requests for production, numerous discovery conferences and waste of judicial resources, and this motion itself would never need to be considered by this court. Moreover, failure to produce necessary electronic documents and the potential destruction of other relevant emails unquestionably prejudiced Plaintiff. Failure to preserve and produce relevant evidence deprived Plaintiff of necessary support for Plaintiff's theory of the case. Also, the failure to disclose certain relevant emails until late in pretrial prevented Plaintiff from deposing certain potentially relevant

---

[25] *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).

witnesses and from questioning witnesses that were deposed on the emails' content. Together these actions had the effect of depriving the trier of fact of all relevant evidence.[26]

Furthermore, Plaintiff is also entitled to a reasonable award of attorneys' fees and costs incurred in connection in seeking the concealed and spoliated evidence and incurred in the filing of this motion. "Under its 'inherent powers,' a district court may also award sanctions in the form of attorneys' fees against a party or counsel so acts in bad faith, vexatiously, wantonly, or for oppressive reasons."[27] "Before awarding such sanctions, the court must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith."[28] "A party demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order."[29] "The bad faith requirement ensures that the district court's exercise of its broad power is properly restrained, and preserves a balance between protecting the court's integrity and encouraging meritorious arguments."[30] It has been shown that Defendants acted in a manner that delayed and disrupted litigation through their failure to produce requested documents and their continued use of a patently illegal ESI retention policy.

Defense counsel admitted to the Court that the City of Prescott failed to ensure steps were taken to notify the City IT Department to preserve ESI. The intentional nature of Defendants' failure to preserve and produce even after the Plaintiff's repeatedly asked Defendant to so warrants a strong sanction. Defendants also have a pattern and practice, as determined in another case, of this type behavior. Therefore, Defendants acted in the requisite bad faith to justify at least sanctions for reasonable attorneys' fees involved in all pretrial discovery as Plaintiff's were deprived of potentially relevant evidence when deposing Defendants.

---

[26] *See Leon*, 464 F.3d at 951. (harshest sanction proper for "practices that undermine the integrity of the judicial proceedings.").
[27] *Leon*, 464 F.3d at 961 (internal quotations and citation omitted).
[28] *Id.* (citation omitted).
[29] *Id.* (internal citation omitted).
[30] *Id.* (internal quotation and citation omitted).

### III. Conclusion

For the reasons set forth herein, Plaintiffs' ask the Court to sanction Defendants by striking Defendants' Answer and entering an award in favor of Plaintiffs pursuant to a damages hearing. In the alternative, Plaintiffs' respectfully request that the Court sanction Defendants' by awarding Plaintiff's discovery costs and expenses, as well as attorney fees, incurred regarding the taking of depositions in this matter. Plaintiffs' also request this Court issue a negative inference jury instruction reagrding the Defendants' intentional failure to abide by the rules of discovery.

Dated this 28th day of March, 2014.

**CURRY, PEARSON & WOOTEN, PLC**

/s/ Michael W. Pearson
Michael W. Pearson, Esq.
Kyle B. Sherman, Esq.
814 W. Roosevelt Street
Phoenix, Arizona 85007
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28th 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

James M. Jellison, Esq.
Jellison Law Offices, PLLC
3101 North Central Avenue, Suite 1090
Phoenix, Arizona 85012

Jon Paladini
Prescott Legal Department
221 S. Cortez Street
Prescott, Arizona 86303
Attorneys for City of Prescott Defendants

/s/ M. Pearson