**JELLISON LAW OFFICES, PLLC**
3101 North Central Avenue
Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-6009
Facsimile: (602) 230-9250
E-mail: jim@jellisonlaw.com
JAMES M. JELLISON, ESQ. #012763

**PRESCOTT LEGAL DEPARTMENT**
221 S. Cortez Street
Prescott, Arizona 86303
Telephone: (928) 777-1288
E-mail: jon.paladini@prescott-az.gov
JON PALADINI, ESQ. #015230
*Attorney for Defendants City of Prescott, Prescott Local Board of the Public Safety Retirement System, Bruce Martinez, Mary Jacobsen, Steven Norwood and Laurie Hadley*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Paul Vicente, and Shawn Marie Vicente, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Prescott, Arizona, is a municipal corporation of the State of Arizona; Bruce Martinez, and Jane Doe Martinez husband and wife, named in their individual and his official capacities; Mary Jacobsen, and John Doe Jacobsen husband and wife, named in their individual and her official capacities; Steven Norwood, and Jane Doe Norwood husband and wife, named in their individual and his official capacities; Laurie Hadley, and John Doe Hadley husband and wife, named in their individual and her official capacities; The Public Safety Personnel Retirement System; and John Does I-V and Jane Does I-V, inclusive.<br><br>Defendants. | Case No. CV-2011-08204-DGC<br><br>**RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FAILURE TO PRESERVE AND PRODUCE ESI**<br><br>**AND**<br><br>**CITY OF PRESCOTT DEFENDANTS' CROSS MOTION FOR SANCTIONS**<br><br>**(Oral Argument Requested)** |

City of Prescott Defendants, through undersigned counsel, hereby submit their Response to Plaintiff's' Motion for Partial Summary Judgment re: Failure to Preserve and Produce ESI by respectfully requesting that said Motion be denied. The City of Prescott Defendants further contend that Plaintiffs have spoliated evidence in this case and are, therefore, subject to sanctions by this Court. Accordingly, a Cross-Motion For Sanctions is raised herein. This Response and Cross-Motion are supported by the attached Memorandum of Points & Authorities, as well as the City of Prescott Defendants' original Statement of Facts, and Controverting/Supplemental Statement of Facts filed simultaneously herewith.

**MEMORANDUM OF POINTS & AUTHORITIES AS TO THE RESPONSE AND CROSS-MOTION**

Although styled as a "Motion For Partial Summary Judgment," Plaintiffs' Motion does not cite to any rule of procedure upon which it is based, nor does it contain any standard of review by which the Court is guided. Accordingly, the first order of business is to decide what kind of motion we are dealing with, and what standards apply[1].

Despite the title of Plaintiffs' Motion as one for "partial summary judgment," and the Court's decision to treat it as a "dispositive motion," Plaintiffs' Motion For Partial Summary Judgment does not appear to be a true Fed.R.Civ.P. 56 Motion. Rule 56 allows a party to move for judgment on a "*claim or defense*" if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Here, Plaintiff does not identify a claim or defense upon which 1) there are no genuine issues of material fact; or 2) he is entitled to judgment as a matter of law based on those facts. Plaintiffs' Motion does not seek to accomplish the relief Rule 56 provides for.

A sanction under Fed.R.Civ.P. 37(b) is only appropriate when a party fails to obey a court's order, *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368

[1] Over Defendants' objections, the Court has agreed to view the Plaintiffs' Motion as some kind of "dispositive motion." Nonetheless, to properly adjudicate the Motion, it is necessary to determine what kind of motion it actually is.

(9th Cir. 1992), and where the discovery violation demonstrated is "due to willfulness, bad faith, or fault of the party." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (citations omitted). Plaintiffs' Motion does not cite to the violation of a Court Order; accordingly, it cannot be a Rule 37(b) motion for sanctions. Nor can Plaintiffs' Motion be construed as a general motion to compel discovery or sanctions under Rule 37 as no statement of good faith consultation was provided. Fed.R.Civ.P. 37(a)(1); 37(d)(1)(B).

Plaintiffs' Motion appears to be, in its essence, a motion for sanctions pursuant to this Court's inherent power to issue sanctions in response to allegedly abusive litigation practices. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991); *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Indeed, the Court's "inherent powers" to award sanctions is the only legal basis provided by Plaintiffs in their Motion. [*See* Plaintiffs' Motion For Partial Summary Judgment, p. 13, lls. 5-7]. Accordingly, the City of Prescott Defendants respond under this legal basis, and applicable standard, as it is the only one provided by Plaintiffs, or logically deduced from the Motion itself.

**CITY OF PRESCOTT DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff's Motion for Partial Summary Judgment contains insufficient facts upon which to conclude that the City of Prescott Defendants spoliated evidence, or that any sanction is appropriate and, accordingly, it should be denied in its entirety.

## I. APPLICABLE LEGAL STANDARD.

"The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences." *Thompson v. U.S. Dep't of Housing & Urban Dev.*, 219 F.R.D. 93, 100 (D.Md. 2003). Spoliation is generally defined as "the destruction or significant alteration of evidence, or the failure to preserve property of another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2nd Cir. 1999). In

Arizona, spoliation is defined as "[t]he intentional destruction of evidence…[t]he destruction, or the significant and meaningful alteration of a document or instrument." *Smyser v. City of Peoria*, 215 Ariz. 428, 438-9, 160 P.3d 1186, 1196-7 n. 11 (App. 2007).

The duty to preserve is triggered "not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Morford v. Wal–Mart Stores, Inc.*, No. 2:09–cv–02251–RLH–PAL, 2011 WL 635220, at p. 3 (D.Nev. Feb. 11, 2011).

A party seeking a sanction based upon spoliation of evidence must show that: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim such that a reasonable trier of fact could find that it would support that claim. *Goodman v. Praxair Servs., Inc.*, 632 F.Supp.2d 494, 509 (D.Md. 2009); *see Victor Stanley, Inc. v. Creative Pipe, Inc. ("Victor Stanley II"),* 269 F.R.D. 497, 520–21 (D.Md. 2010); *In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1070–78 (N.D.Cal. 2006); *Zubulake v. UBS Warburg LLC ("Zubulake IV"),* 220 F.R.D. 212, 216 (S.D.N.Y. 2003). In considering whether an adverse inference instruction should be given, it should be noted that "[o]ther courts considering whether loss of evidence merits an instruction allowing an adverse inference generally require evidence of either bad faith or intentional destruction." *Med. Lab. Mgmt. Consultants v. Am. Broad. Co., Inc.,* 306 F.3d 806, 823-4 (9th Cir. 2002); *Akiona v. U.S.,* 938 F.2d 158, 161 (9th Cir. 1991); *Keller v. U.S.,* 58 F.3d 1194, 1197-98 (7th Cir. 1995).

Only in extreme circumstances, may a court may impose the ultimate sanction of dismissal or default against a party that can be shown to have engaged in spoliation of evidence. Such extreme sanctions may be imposed when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" because "courts have inherent power to dismiss an action when a party has willfully deceived the court and

engaged in conduct utterly inconsistent with the orderly administration of justice." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *see also, Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995) (noting that dismissal is appropriate as a sanction in two situations: 1) where the destroyed document is dispositive of the case, and 2) where the guilty party has engaged in such wholesale destruction of primary evidence regarding a number of issues that the district court cannot fashion a lesser sanction). Before considering the harsh sanction of dismissal or default, this Court must consider factors including 1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its dockets; 3) the risk of prejudice to the party seeking sanctions; 4) the public policy favoring disposition of cases on the merits; and 5) the availability of less drastic sanctions. *See Leon*, 464 F.3d at 958; *see also, Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011).

The Court's authority to sanction parties for spoilation of evidence springs from two sources. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). The first is the inherent power of the Court to issue sanctions in response to abusive litigation practices. *Id.; see also, Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991). The imposition of sanctions under a federal court's inherent powers is warranted where a party has acted in bad faith - that is, "vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46. This inherent power is broad and can range from minor sanctions, such as the awarding of attorney's fees, *Leon*, 464 F.3d at 961, to more serious sanctions, such as dismissal of claims, *Id.* at 958, or instructing the jury that it may draw an adverse inference, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386–387 (9th Cir. 2010); *see also, In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1078 (N.D.Ca. 2006). Sanctions under these "inherent powers must be exercised with restraint" and should be appropriate to the conduct that triggered the sanction. *Chambers, Inc.*, 501 U.S. at 43-45. The second source of authority is Fed.R.Civ.P. 37(b). *Leon*, 464 F.3d at 958.

## II.     STATEMENT OF MATERIAL FACTS.

In this case, within approximately one month of being notified to preserve and provide records in this matter, the City of Prescott's City Attorney issued a notice of legal records hold, and instructions to suspend deletion practices as to relevant documents, to key employees, and the City Clerk provided Plaintiffs' counsel approximately 298 pages of documents.  [DSSOF 3-8, 17].  The individual Defendants in this matter, Norwood, Hadley, Martinez, and Jacobsen, all took independent steps to identify and preserve documents deemed relevant to Plaintiffs' claims.  [DSSOF  9-12].   The City hired an investigator who also collected and preserved case relevant documents.  [DSSOF 18]. Although the City of Prescott preserves *deleted* emails for 30 days, *undeleted* emails are preserved indefinitely. [DSSOF 13-16]. There is no evidence that any person deleted or destroyed a relevant document after the legal hold letter went out.

When Plaintiffs' filed their Complaint, the City Attorney issued a supplemental legal hold letter to eighteen (18) separate City employees.  [DSSOF 19-21].

During discovery in this case, the City of Prescott Defendants worked diligently to find, identify, and disclose numerous physically and electronically stored documents, redacting or holding back documents based on recognized privileges that were conveyed to opposing counsel.  [DSSOF  22-46].   When discovery disputes arose, Defendants' counsel worked to resolve those disputes.  [DSSOF 30, 33, 40, 41, 43, 47-91].   Indeed, the largest dispute occurring in this matter resulted from Plaintiffs failure to review nearly 1500 documents Defendants had made available for inspection, while Plaintiffs engaged in discovery – including some 20 depositions – without first inspecting those documents. [DSSOF  78].  The facts regarding discrete discovery issues raised in this case, are addressed below.

## III. LEGAL ANALYSIS.

Of course, the starting point of a spoliation argument is whether there is an actual spoliation of evidence known to be relevant by the spoliating party. *See Apple, Inc. v. Samsung Electronics Co., Inc.*, 888 F.Supp.2d 976, 985 (N.D. Ca. 2012). As described below, Plaintiffs show no actual spoliation. Indeed, Plaintiffs' Motion does not sound in legitimate complaints of evidence spoliation but, rather, is in the nature of a series of discovery disputes. Even as to those disputes, Plaintiffs did not make *bona fide* efforts to resolve those disputes but, rather, nursed the disputes to the point in litigation where Plaintiffs could rely on them as a basis for a sanctions request. This approach is both inconsistent with the law of spoliation, and violative of this Court's instructions on how discovery disputes are to be resolved.

It should be noted from the outset, however, that Plaintiffs' Motion does not support the intentional or bad faith destruction of "dispositive documents," or the wholesale destruction of primary evidence on a number of issues, such that an ultimate sanction, such as striking the Answer, is appropriate. Nor does consideration of the elements necessary for such a result allow an "ultimate" sanction in this case. *See Leon*, 464 F.3d at 958. Additionally, there is nothing presented by Plaintiffs that evidences intentional or bad faith destruction of evidence such that an adverse inference instruction against Defendants is permissible. *Akiona v. U.S.*, 938 F.2d 158, 161 (9th Cir. 1991). Finally, a theme that runs through all of Plaintiffs' complaints is the inability to show that relevant evidence was actually spoliated, or that Plaintiff suffered any palpable prejudice, or took meaningful action to address claimed prejudice.

### a. Mary Jacobsen's Notes Of Meetings

Plaintiffs complain they did not receive notes that Defendant Mary Jacobsen, the City's Human Resources Director, took during meetings held between December 22, 2010 and January 3, 2011. First, there was never any concealment of the taking of these notes. At

deposition, Ms. Jacobsen not only testified that these notes were taken at a time she was working intimately with the City Attorney and outside counsel on Vicente's issues, but that she actually provided the notes to the City Attorney, who then marked the notes as attorney/client privileged. [DDSOF 73, 216, 217]. At the February 21, 2014 conference, the City of Prescott Defendants asserted the same attorney/client privilege regarding the disclosure of the notes. [DSSOF 73, 74]. Second, this Court has already held that notes of the same meetings taken by Vicente were subject to attorney/client privilege, and therefore not required to be disclosed, even though Vicente did not actually have counsel during the time he took the notes. [DSSOF 73]. Here, Ms. Jacobsen was taking notes at a time both in-house and outside counsel were actively involved, and specifically for their use. The City of Prescott Defendants take the position now, as they always have, that, if Vicente's notes of the same meetings are privileged when taken in *anticipation* of counsel's future involvement, Ms. Jacobsen's notes of the same meetings are privileged when taken for purposes of dealing with counsel at the time the meetings were actually occurring. This is not a spoliation issue at all, but is a privilege issue. Moreover, at no time after the February 21, 2014 conference have Plaintiffs approached the Court to seek relief on this "discovery issue." Plaintiffs cannot avoid the Court's discovery dispute procedures simply to preserve a basis, albeit a spurious one, to submit a spoliation motion later.

**b. Mary Jacobsen's Outlook Calendar**

Defendants produced the Outlook calendars of Ms. Jacobsen and Mr. Martinez on February 19, 2014, with the following advisement: "redactions have been made for attorney/client privileged notations and/or private information." [DSSOF 46, 218]. After Plaintiff complained that the dates of meetings with counsel are not privileged, Defendants provided a new version of Ms. Jacobsen's calendars, with a letter stating that only personal and confidential appointments were redacted on the new version. [DSSOF 88, 219]. Following that letter, the subject of personal appointment redactions was never discussed.

[DSSOF 220]. Again, the issue of redactions in the calendar for personal reasons is an issue that could have been brought up with the Court after the February 21, 2014 meeting, but was not. To the extent there was any late disclosure regarding the Outlook calendars, Plaintiffs have never raised any issue that they have been prejudiced during discovery, or deprived of any relevant information. Indeed, in Plaintiffs' Motion, they do not claim the later receipt of the Outlook calendars resulted in any need to do further discovery, or somehow changed the known timeline of events in the case. Most importantly, this is not a case of destroyed or missing information, but is a simple case of redactions on an existing document having been made based on a claimed privilege.

**c. Mr. Devendorf's Personnel and Disciplinary File**

Plaintiffs' complaint regarding Mr. Devendorf's records fall into two categories: a) that they received a memo signed by Mr. Devendorf on November 30, 2010 through a subpoena to Mr. Devendorf and not from the City; and b) they have not received Mr. Devendorf's personnel information that pre-dates the mid-2000s. [Plaintiffs Motion, pgs. 3, 4; items 3 and 7]. As with the other issues, this is not a spoliation issue as all of these documents exist, and have not been altered in any way. Rather, this is an issue involving the timing of disclosure, and Defendants' position that Mr. Devendorf's old personnel information should be subject to Court protection and has no bearing on this case. Again, this issue was specifically raised at the February 21, 2014 conference; Defendants suggested that the Parties involve the Court, and, thereafter, Plaintiffs did not raise the issue again until they filed their present Motion.

As to Mr. Devendorf, on September 20, 2013, the City of Prescott produced some 81 pages of material from Don Devendorf's personnel file which included performance evaluations and performance and disciplinary actions from approximately 2004 to the present. [DSSOF 201]. A memo signed by Mr. Devendorf on or around November 30, 2010 resulting from his October 2010 comment to Caron Nyquist was not in his personnel file, but was in

the possession of Mr. Devendorf who provided the document to Plaintiffs in response to their subpoena duces tecum. [DSSOF 200]. The document was provided to Plaintiffs during the open discovery period, and is not altered or changed in any way. It is also worth noting that Mr. Devendorf was able to produce the document at his deposition, along with many others, because he had followed the City's earlier instruction to preserve relevant case documents. [DSSOF 202, 203].

At the February 21, 2014 conference, Plaintiffs raised the discovery issue that they wanted *all* of Mr. Devendorf's personnel, training, and/or disciplinary documents dating from the mid-2000s back to the beginning of his employment. [DSSOF 204]. At the conference, Defendants took the position that these documents have no bearing on the case, and the information may be subject to misuse by Vicente, a subordinate employee actively working in the Fire Department. [DSSOF 204]. As an alternative to disclosure of all of Devendorf's file, Defendants invited Plaintiffs' counsel to view the entire Devendorf file so that counsel could determine whether there were relevant documents pre-dating the mid-2000s that should be disclosed; provided counsel's review remained confidential to the same extent that counsel's review of the Google and MSN email lists were being kept confidential. [DSSOF 204]. Thereafter, Plaintiffs' counsel never approached Defendants' counsel with a request to review the entire Devendorf file [DSSOF 205]. Instead, Plaintiffs filed their present Motion.

**d. Issues Involving The Disclosure Of Four Discrete Emails**

In their Motion, Plaintiffs make a spoliation claim arising from the disclosure of four (4) discrete emails, three (3) of which Plaintiffs actually received as a product of subpoenas duces tecum, rather than as a product of the City's response to requests to produce. [Plaintiffs' Motion, pgs. 4-5, items 4-6, 8-9]. These emails include a) a December 29, 2008 email from Mr. Martinez to Mr. Lucas regarding Caron Johnson; b) a December 10, 2010 email from Mr. Martinez to Mr. Lucas regarding five issues including an inquiry regarding Don Devendorf; c) February 24, 2011 emails between Mr. Lucas and Mr. Devendorf; and d) a

February 7, 2011 email from Ms. Jacobsen to Mr. Martinez.   Defendants will deal with each email in order.

As to the December 29, 2008 email from Mr. Martinez to Mr. Lucas in which Mr. Martinez, confidentially, provides Mr. Lucas with a "David Letterman-style" Top 10 List for reasons people might speculate that Ms. Johnson is moving from one assignment to another, that email was actually outside the date range for emails requested by Plaintiffs (January 1, 2009 to the present) in their Request For Production. [DSSOF 22].  Accordingly, and contrary to Plaintiffs' assertions, the email would not have been discovered and disclosed as a result of Plaintiffs' request.  Second, the email has nothing to do with Mr. Vicente, Mr. Devendorf, or the issues in this case, and is not relevant to the events which unfolded two years later.  Third, Mr. Martinez did not even recall the email, until it was produced by Mr. Lucas.   [DSSOF 222].  Finally, this is not a spoliation issue as the email exists and is unaltered, and was produced during the discovery period.

As to the December 10, 2010 email from Mr. Lucas to Mr. Martinez, it is simply an email in which Mr. Martinez declines to tell Mr. Lucas about the disposition of the issues involving Mr. Devendorf other than to state that Devendorf was placed on an improvement plan.  This email is of marginal relevance, particularly in light of the fact that Plaintiffs were already aware, through discovery, that Devendorf had been disciplined for the Laipple/Stazynski comments, investigated for the Caron Johnson comments, and that the investigation resulted in a requirement that Devendorf attend sensitivity training, and the imposition of minor alterations in his job duties.  [DSSOF  203].  Again, Plaintiff cannot show relevance or prejudice and, ultimately, this is not a spoliation issue as the email was produced during the discovery period, and is unaltered.

For the same reasons, the February 24, 2011 emails between Mr. Lucas and Mr. Devendorf are simply communications, from one employee to another, for an informal opinion and critique of work performance.  This email is, in no way, relevant to the case

issues and would not have been reasonably subject to production in response to Plaintiffs' Request For Production. As with all of the issues raised by Plaintiffs, this is not a spoliation issue as the email was produced during the discovery period, and is unaltered.

Finally, the February 7, 2011 email from Mary Jacobsen to Bruce Martinez was produced as part of Defendants' August 2012 production. There is no evidence that any related email pre-dated, or any related email post-dated, the February 7, 2011 email and Plaintiffs' suggestions to the contrary are nothing more than rank speculation on their part. Additionally, to the extent Plaintiffs claim they were deprived of information that the City was "considering" discipline in that period, such a claim is false. Defendants provided Plaintiffs with two draft letters of reprimand that Mr. Martinez created in February 2011, but did not deliver to Mr. Vicente. [DSSOF 29]. This is not a spoliation issue as the February 7, 2011 email was produced during the discovery period, and is unaltered; and there is no evidence that any related emails or other material were not produced.

**e. Redactions Of Interview Transcripts**

Plaintiffs' final complaint involves the redaction of attorney/client communications contained in certain parts of the transcripts of interviews conducted by IRI/Keith Sobraske.

On November 22, 2013, Defendants disclosed the transcripts of the IRI interviews which, inadvertently, had not been unredacted of dialogue on privileged communications. [DSSOF 37]. On December 9, 2014, Defendants brought the inadvertent disclosure to the Court's attention resulting in an order "to promptly return, sequester, or destroy" the report and transcripts "until the privilege issue is decided by the Court." [DSSOF 39]. On January 16, 2014, Defendants provided Plaintiffs with the redacted IRI transcripts. [DSSOF 42]. On January 22, 2014, the Court ruled Plaintiffs were not entitled to privileged information in the transcripts, but that Plaintiffs were entitled to an appropriate privilege log. [DSSOF 43]. On February 3, 2014, the Defendant provided Plaintiffs with a privilege log regarding

subpoenaed documents for Keith Sobraske/IRI, Don Devendorf, and Stacy Gabriel. [DSSOF 44].

The only redactions on the IRI interview transcripts are redactions of discussions of attorney/client communications between the witness and legal counsel. The Court has ruled that such redactions are appropriate. If Plaintiffs were concerned the redactions exceeded this Court's January 22, 2014 ruling, they could have requested an *in camera* inspection of the original transcripts prior to the close of discovery. Instead, they chose to pursue their Motion without seeking appropriate Court intervention. This is not a spoliation issue as the IRI transcripts were produced during the discovery period, any alteration through redactions is based upon Court Order, and the full text of the transcripts exist.

**<u>CITY OF PRESCOTT DEFENDANTS' CROSS-MOTION FOR SANCTIONS</u>**

The City of Prescott Defendants hereby incorporate the legal standard for spoliation discussed above and request the Court issue sanctions in Defendants favor as follows.

**a. Plaintiffs' Failure To Answer Requests To Admit**

On December 19, 2013, Defendants propounded a Requests For Admissions and Interrogatories to Plaintiffs in an effort to have Plaintiff J.P. Vicente either admit to the accuracy of his three (3) IRI/Sobraske transcripts of interviews and/or identify what parts, if any, were inaccurate and, if so, in what way. [DSSOF 94, 95]. Plaintiffs did not provide substantive responses to the Requests For Admissions or Interrogatories. [DSSOF 96-103]. Plaintiff J.P. Vicente claimed he had never read the transcripts and, therefore, was unable to verify them at deposition in February, 2014. [DSSOF 99]. Even though the Parties agreed, as a matter of discovery dispute resolution, that Plaintiff J.P. Vicente would review the transcripts and provide complete answers to the Request For Admissions and Interrogatories by March 7, 2014, to date, Plaintiff J.P. Vicente has not done so. [DSSOF 100-102].

Mr. Vicente's position on the accuracy of his interview transcripts (which concern the events he complains of in this case) is of central relevance, and his refusal to cooperate in

legitimate discovery to ascertain that position is prejudicial to the Defendants. Indeed, at trial, Defendants do not know whether Mr. Vicente will acknowledge, or disavow, the accuracy of the transcripts if offered for impeachment. Accordingly, Plaintiffs' conduct is sanctionable pursuant to Fed.R.Civ.P. 37(d) as well as this Court's inherent powers to sanction for abusive discovery practices. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Additionally, sanctions are appropriate as the Parties spent time arriving at a resolution without Court intervention that was then disregarded by Plaintiffs.

Defendants respectfully request the sanctions include, at a minimum, an Order that Plaintiff J.P. Vicente is deemed to have admitted Requests For Admission Nos. 1, 2 and 3, and an award of attorneys' fees and cost incurred in arriving at a dispute resolution that went unfulfilled, and for bringing this Response and Cross-Motion. A certification on this issue pursuant to Fed.R.Civ.P. 37(d)(1)(B) is attached to this Cross-Motion as Exhibit A.

**b. Plaintiffs' Big Chino Scheduling And Financial Information**

Plaintiff J.P. Vicente has testified to the existence of both calendars and financial information related to his business, Big Chino Guide Service - a side business that Vicente was being paid from as he was simultaneously being paid by the City for services that he was either performing, or was supposed to perform in trade, but did not. [DSSOF 104-112]. Defendants have requested the calendars and financial information through Requests to Produce and, ultimately, should have received the information through this Court's Order dated January 22, 2014. [DSSOF 104-112]. To date, Plaintiffs have failed to provide any calendars or financial information related to Big Chino. [DSSOF 114-118].

This information is relevant to show that Plaintiff was working a side business, and making money at it, while simultaneously obtaining City compensation under the false pretense that he either was working his shifts, or would actually work his shifts later. Defendants are prejudiced because they are left guessing how many Fire Department shifts that Vicente paid others to work so he could, in essence, cheat the taxpayers while earning

extra money on the side. Accordingly, Plaintiffs' conduct is sanctionable pursuant to Fed.R.Civ.P. 37(d) as well as this Court's inherent powers to sanction for abusive discovery practices. *See Leon, supra.* The fact that Vicente has testified to the existence of documents that he has steadfastly refused to produce shows his intentional conduct and/or bad faith. Indeed, it stretches any reason to believe that Vicente's business has operated for literally years, but that he has no calendars, no financial information of any kind, and is able to produce only seven redacted, unsigned guide contracts.

Defendants respectfully request the sanction include, at a minimum, an adverse jury instruction that had the requested documents been produced they would have been favorable to Defendants' position in this case, and an award of attorneys' fees and cost incurred in pursuing this discovery item, attempting discovery dispute resolution, and for bringing this Response and Cross-Motion. A certification on this issue pursuant to Fed.R.Civ.P. 37(d)(1)(B) is attached to this Cross-Motion as Exhibit A.

**c. Plaintiffs' Failure to Search For And/Or Disclose Emails**

Here, even though Defendants delivered a legal hold letter to Plaintiffs' counsel in July 20, 2011, Plaintiff J.P. Vicente cannot say that he ever saw it. [DSSOF 119-122]. Even though Defendants issued a legal hold letter and a comprehensive request for the production or inspection of physical and electronic communications, Mr. Vicente never suspended his practice of routinely deleting his emails, never sought technical assistance in locating and preserving emails, and cannot accurately describe the procedure he followed to search for, locate, and preserve electronically stored information. [DSSOF 123-146]. Indeed, these failures followed this Court's September 10, 2013 Order in which this Court specifically Ordered Plaintiffs to identify all efforts to preserve physical and electronically stored information. [DSSOF 130]. When Plaintiff was asked to identify all emails he used, he failed to identify a particular email address – jvicente@iafflocal3066.org – which he clearly used to communicate issues involving his employment. [DSSOF 132, 133]. Even based on Vicente's

limited recollection of search terms he used (at some unknown time) to locate emails, there were emails discovered through other sources that Vicente should have located and produced. [DSSOF 150]. Additionally, though Plaintiffs' counsel represented to the Court on February 20, 2014 that all relevant emails in Plaintiffs' possession had been located and produced, on February 24, 2014, Defendant received a supplemental disclosure statement that included 13 emails. [DSSOF 81, 149].

Based on Plaintiffs' wholesale failure to adequately search for and preserve electronically stored information, coupled with his admission that he has not suspended a practice of deleting individual emails and his failure to identify emails he was involved in that exist from other sources (and should have been revealed under the search terms Plaintiff claims he did use) this Court can infer that Plaintiffs have destroyed or lost emails relevant to this matter, and have acted intentionally or in bad faith.

Accordingly, Plaintiffs' conduct is sanctionable pursuant to Fed.R.Civ.P. 37(b) and (d) as well as this Court's inherent powers to sanction for abusive discovery practices. Defendants respectfully request the sanction include, at a minimum, an adverse jury instruction that emails lost or destroyed would have been favorable to Defendants' position in this case, and an award of attorneys' fees and cost incurred in pursuing this discovery item, attempting discovery dispute resolution, and for bringing this Response and Cross-Motion. A certification on this issue pursuant to Fed.R.Civ.P. 37(d)(1)(B) is attached to this Cross-Motion as Exhibit A.

**d. Plaintiffs' Digital Recorder Was Not Produced During The Open Discovery Period.**

Plaintiff J.P. Vicente's February 23, 2011 written Administrative Grievance contains no less than fifteen specific quotes from a meeting that he had with Defendant Laurie Hadley on January 20, 2011. [DSSOF 151]. During his interview with IRI, Vicente admitted that "some of the conversation have been recorded." [DSSOF 152]. When the investigator, Sobraske, asked to inspect the digital recorder used, Vicente and his counsel stalled requests

for four (4) months before complying. [DSSOF 153-160]. On July 20, 2011, Defendants sent a legal hold letter to Plaintiffs' counsel, specifically referencing the need to preserve the digital recorder. [DSSOF 157, Exhibit 7].

On June 29, 2012, Defendants submitted a Request For Production that clearly covered the digital recorder. [DSSOF 161]. Despite repeated requests, Plaintiffs never provided the digital recorder for inspection during the open discovery period, claiming variously that he had given it back to the union, that it was with Plaintiffs' counsel, that it had been returned to Vicente, or that Plaintiffs' counsel had placed it into the location where counsel "keep[s] evidence." [DSSOF 162-179]. On February 21, 2014 (the last day of discovery), Plaintiffs' counsel stated that he did not have the digital recorder and thought Plaintiff Vicente might have it. [DSSOF 178]. Finally, on March 31, 2014, after discovery and expert disclosure had both long been closed, Plaintiffs' counsel wrote that "the recorder was located in our office, in an incorrect evidence bin." [DSSOF 180]. When the recorder was inspected by undersigned on April 14, 2014, it showed two files, one of which was empty, and the other of which had an unknown voice saying "testing, testing," or words to that effect, and then blank after that. [DSSOF 181-184].

The January 20, 2011 meeting with Ms. Hadley was pivotal in that Vicente was told at that meeting that no criminality was being ascribed to him, the Disciplinary Agreement was off the table, and he might only face discipline for insubordination. Defendants are prejudiced because the words Ms. Hadley actual spoke are the best evidence of the conversation. Moreover, the fact that Plaintiff J.P. Vicente was able to write so many quotes from the January 20, 2011 strongly supports that the conversation was recorded and at some point later erased. Defendants have been further prejudiced because they have been deprived of forensically analyzing the recorder for intentional erasures, or identifying the voice on the recorder through discovery. The digital recorder was in Plaintiffs' (and their counsel's) exclusive control for the entire life of this case, yet never turned over until April 14, 2014.

"Just as the intentional or grossly negligent *destruction* of evidence in bad faith can support an inference that the destroyed evidence was harmful to the destroying party [citations omitted], so, too, can intentional or grossly negligent acts that hinder discovery support such an inference, *even if* those acts are not ultimately responsible for the unavailability of the evidence (*i.e.,* even if those acts do not satisfy the 'culpable state of mind' factor because they did not cause the destruction or unavailability of the missing evidence)." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 110 (2d Cir. 2002).

Here, the failure to provide the recorder for inspection and testing is inexcusable. Accordingly, Plaintiffs' conduct is sanctionable pursuant to Fed.R.Civ.P. 37(d) as well as this Court's inherent powers to sanction for abusive discovery practices. Defendants respectfully request the sanction include, at a minimum, an adverse jury instruction that the content of the recorder and any expert analysis of the recorder would have been favorable to Defendants' position in this case or that Plaintiffs are ordered to pay for the cost of a forensic analysis of the recording device by an expert of Defendants' choosing, and an award of attorneys' fees and cost incurred in pursuing this discovery item, attempting discovery dispute resolution, and for bringing this Response and Cross-Motion. A certification on this issue pursuant to Fed.R.Civ.P. 37(d)(1)(B) is attached to this Cross-Motion as Exhibit A.

## IV. CONCLUSION.

For all of the foregoing reasons, Defendants respectfully request that Plaintiffs' Motion For Partial Summary Judgment be denied and the City of Prescott's Cross Motion for Sanctions be granted and that this Court award sanctions against Plaintiffs as follows: 1) an adverse instruction in favor of the Defendants provided at trial; 2) Plaintiffs are deemed to have admitted Defendants' Requests for Admission 1, 2, and 3; 3) Plaintiffs will be required to pay the costs of a forensic analysis of the digital recorder by an expert of Defendants' choosing; 4) Defendants are awarded their reasonable attorneys' fees and costs incurred in pursuing production of the four noted discovery items, seeking dispute resolution regarding

the four items, and for drafting and filing this Response and Cross-Motion; and 5) for any other or further relief the Court deems just and proper under the circumstances.

DATED this 30th day of April, 2014.

JELLISON LAW OFFICES, PLLC

By s/James M. Jellison
James M. Jellison
Jellison Law Offices, PLLC
3101 North Central Avenue
Suite 1090
Phoenix, AZ 85012

PRESCOTT LEGAL DEPARTMENT

By s/Jon Paladini
Prescott Legal Department
221 S. Cortez Street
Prescott, Arizona 86303

*Attorney for City of Prescott Defendants*

I hereby certify that on 30th day of April, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael W. Pearson
Kyle B. Sherman
Curry, Pearson & Wooten, PLC
814 West Roosevelt Street
Phoenix, Arizona 85004
*Attorney for Plaintiff*

Copy was hand delivered on May 1, 2014:

Honorable David G. Campbell,
U.S. District Judge
U.S. Courthouse, Suite 623
401 W. Washington Street, SPC 58
Phoenix, Arizona 85003-2156

s/Kasey M. Rivera